**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John Louis BRANCO,
Defendant-Appellant.**

**No. 85–1681.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 14, 1986.

Decided Sept. 3, 1986.

Stanley W. Parry, Las Vegas, Nev., for plaintiff-appellee.

Nicholas De Pento, San Diego, Cal., for defendant-appellant.

Before CHOY and WALLACE, Circuit Judges, and ENRIGHT,* District Judge.

---

* Honorable William B. Enright, United States District Judge, Southern District of California, sitting by designation.

WALLACE, Circuit Judge:

Branco and several codefendants were convicted of conspiracy to counterfeit, 18 U.S.C. § 371, and of aiding and abetting counterfeiting obligations, 18 U.S.C. § 473. After trial, the case was assigned to a different district judge for sentencing. Prior to sentencing, the government filed a sentencing memorandum and an affidavit of a Secret Service Agent, indicating that Branco had connections with organized crime. After a hearing, the district judge sentenced Branco to the maximum terms allowed of five years for conspiracy to counterfeit and ten years for aiding and abetting the counterfeiting of obligations and ordered the sentences to be served consecutively.

Branco subsequently brought a motion to vacate, set aside, reduce or correct his sentence pursuant to 28 U.S.C. § 2255 and rule 35 of the Fed.R.Crim.P. At the same time, he filed a motion to disqualify the district judge from ruling on the motion pursuant to 28 U.S.C. § 144 based on a statement the district judge had made nine years earlier that he would impose maximum sentences on persons affiliated with organized crime. Upon denial of the later motion, Branco brought a motion to reconsider and it was also denied. The district judge then denied the motion to vacate, set aside, reduce or correct the sentence. On appeal, Branco challenges these rulings. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

I

■ We will reverse a district court's denial of a motion for recusal only if the decision was an abuse of discretion. *United States v. Hamilton*, 792 F.2d 837, 839 (9th Cir.1986); *Sewer Alert Committee v. Pierce County*, 791 F.2d 796, 798 (9th Cir. 1986) (per curiam). Section 144 provides that when a party to a proceeding files *"a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice ... against him ... such judge shall proceed no further therein, but another judge shall be*

assigned to hear such proceeding." 28 U.S.C. § 144 (emphasis added).

In this case, Branco waited to file his motion to disqualify until after sentencing had been completed. With his motion, Branco filed an affidavit in which he alleged that the district judge was personally biased against all persons who have been associated with "organized crime." The basis of this allegation was a statement made by the district judge nearly a decade earlier, in connection with sentencing in a different case. In that case, he sentenced a defendant to the maximum term because of the defendant's association with organized crime. *See United States v. Perri*, 513 F.2d 572, 573 n. 1 (9th Cir.1975) (*Perri*). In this earlier, unrelated, case, the district judge had explained that presentence reports made it "quite clear" that the defendant then before him was "affiliated with organized crime, and when I'm satisfied with that, I'll impose only one sentence on any defendant, and that's the maximum." *Id.*

"A disqualification motion filed after trial and judgment is generally considered untimely." *Waggoner v. Dallaire*, 649 F.2d 1362, 1370 (9th Cir.1981) (*Waggoner*). "A defendant cannot take his chances with a judge and then, if he thinks that the sentence is too severe, secure a disqualification and a hearing before another judge." *Taylor v. United States*, 179 F.2d 640, 642 (9th Cir.) (per curiam), *cert. denied*, 339 U.S. 988, 70 S.Ct. 1010, 94 L.Ed. 1389 (1950); *see Davis v. Cities Service Oil Co.*, 420 F.2d 1278, 1282 (10th Cir.1970); *In re United Shoe Machinery Corp.*, 276 F.2d 77, 79 (1st Cir.1960). We apply these principles and conclude that Branco's motion for disqualification was untimely.

■ Delay in filing a motion for disqualification may be excused if good cause is shown for why the motion was not timely filed. *See Waggoner*, 649 F.2d at 1370; *cf. United States v. Conforte*, 624 F.2d 869, 879–80 (9th Cir.) (*Conforte*), *cert. denied*, 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980). Branco's delay in this case cannot be excused. He relies on state-

ments made by the district judge that are quoted in a published opinion filed nine years before Branco's sentencing hearing. *See Perri,* 513 F.2d at 573 n. 1. Surely, this material could have been found before sentencing—and Branco does not even allege that it was not. The record shows that Branco and his attorney discussed the possibility of a motion to disqualify *prior* to sentencing. Branco did not move for disqualification, however, until after he received the maximum sentence.

Branco contends the district judge's continuing predilection for imposing maximum sentences is evidenced by the fact that Branco received a maximum sentence, and that because he had to await his sentence to show that fact, he had good cause to delay until after sentencing to move for the district judge's disqualification. We reject this argument. *See Conforte,* 624 F.2d at 881–82; *United States v. Azhocar,* 581 F.2d 735, 739–40 (9th Cir.1978), *cert. denied,* 440 U.S. 907, 99 S.Ct. 1213, 59 L.Ed.2d 454 (1979); *see also Berger v. United States,* 255 U.S. 22, 31, 41 S.Ct. 230, 232, 65 L.Ed. 481 (1921).

## II

■ Branco also argues that the sentencing judge erred by denying his motion pursuant to 28 U.S.C. § 2255 and Fed.R. Crim.P. 35 to vacate, set aside, reduce or correct his sentence. District courts "are accorded virtually unfettered discretion in imposing sentence." *United States v. Barker,* 771 F.2d 1362, 1364 (9th Cir.1985) (*Barker* ). Indeed, with strictly limited exceptions, sentences that fall within statutory limits are not subject to appellate review. *See United States v. Tucker,* 404 U.S. 443, 447, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972); *Barker,* 771 F.2d at 1364; *United States v. Lopez-Gonzales,* 688 F.2d 1275, 1276 (9th Cir.1982) (*Lopez-Gonzales* ); *United States v. Weston,* 448 F.2d 626, 631 (9th Cir.1971) (*Weston* ), *cert. denied,* 404 U.S. 1061, 92 S.Ct. 748, 30 L.Ed.2d 749 (1972).

### A.

■ One narrow exception to this general rule applies when "the sentencing court in effect refuses to exercise its discretion." *Barker,* 771 F.2d at 1364, *quoting United States v. Wardlaw,* 576 F.2d 932, 938 (1st Cir.1978). Thus, we may conduct a "limited review of the sentencing process to insure that discretion has, in fact, been exercised by the district court" on an individualized basis. *Barker,* 771 F.2d at 1364; *see Dorszynski v. United States,* 418 U.S. 424, 443, 94 S.Ct. 3042, 3052, 41 L.Ed.2d 855 (1974); *Lopez-Gonzales,* 688 F.2d at 1276. We will vacate the sentence and remand when the sentencing judge announces and applies a rigid policy of imposing the maximum sentence for a given offense. *See Barker,* 771 F.2d at 1364; *Lopez-Gonzales,* 688 F.2d at 1277.

■ Although Branco was sentenced to the maximum sentences for his crimes, we have no reason based upon the record before us to believe the district judge abdicated his discretion. Indeed, Branco's several codefendants in his criminal endeavor received considerably lesser sentences than Branco did.

Branco contends, however, that we must consider the district judge's statement, nearly a decade before Branco was sentenced, that anyone associated with organized crime will receive the maximum sentence. Whether the district judge abused his discretion in that case, *see Perri,* 513 F.2d at 573 n. 1, is not before us. We cannot presume that because a district judge erred—or may have erred—in one case, he will commit the same error at every opportunity presented to him in subsequent cases. Branco does not cite any part of the record in this case which indicates that the district judge will sentence everyone with organized crime connections to the maximum term. Branco cites no instance since the district judge's decade-old remarks, quoted in *Perri,* to suggest that the judge generally applies such a policy. Nor has Branco presented any evidence showing that when any other defendant associated with organized crime was

sentenced by the district judge, the maximum sentence was imposed. *Cf. Woosley v. United States*, 478 F.2d 139, 143 (8th Cir.1973) (en banc) (statement of judge's "policy" coupled with examination of district court records demonstrating that sentencing judge had *never* imposed less than the maximum sentence for convictions of relevant class); *United States v. Daniels*, 446 F.2d 967, 971 (6th Cir.1971) (statement of judge's policy coupled with evidence he did not deviate from that policy). We cannot conclude that the district judge erred in declining to vacate or reduce Branco's sentence on the basis of a few errant words some nine-years past.

### B.

A second narrow exception to the general bar of appellate review of sentencing determinations arises when the sentencing judge relies solely on a confidential memorandum that is not made available to the defendant's counsel. *United States v. Dubrofsky*, 581 F.2d 208, 215 (9th Cir. 1978); *see United States v. Miller*, 588 F.2d 1256, 1266–67 (9th Cir.1978) (*Miller*), *cert. denied*, 440 U.S. 947, 99 S.Ct. 1426, 59 L.Ed.2d 636 (1979); *Perri*, 513 F.2d at 574–75; *Weston*, 448 F.2d at 631–33. Branco does not assert that the documents filed by the government were unavailable to him. Rather, he contends that the district judge improperly relied upon the government's sentencing memorandum and the affidavit of the Secret Service Agent to conclude that Branco was associated with organized crime. Branco contends such reliance was error under *Weston* because the materials were not based on information demonstrated to be accurate but upon groundless assertions that Branco had little ability to disprove. *Cf. Weston*, 448 F.2d at 631, 634.

*Weston* is clearly distinguishable. In that case, a presentence charge that Weston was "the chief supplier [of heroin] to the Western Washington area" was unsupported by any information other than a confidential report based on an unsworn memorandum indicating that an informant had once said Weston was about to make a trip to Mexico to purchase heroin. *Id.* at 630. In *Weston*, the district court relied on a confidential report, to which the defendant had no access. *Id.* Moreover, the information provided in this case, that Branco had connections to organized crime, was considerably more substantial than in *Weston*. *See id.*

The government's sentencing memorandum in this case rested upon evidence drawn from several sources. These included tape-recorded conversations between Branco and his coconspirators in which they referred to organized crime connections. In addition, the affidavit of the Secret Service Agent stated not only that multiple informants had identified Branco as an "enforcer" for an organized crime figure, but also that Branco himself had admitted to association with that person. Branco also made admissions during negotiations he initiated with the government in hopes of obtaining leniency for his wife in another criminal proceeding. Branco now challenges the accuracy of the statements he made based on the context of his admissions. We see nothing to suggest that Branco's statements occurred in an environment that rendered them inherently unreliable.

This, then, is not a case like *Weston* in which the district court relied on allegations included in a confidential report that were "not within the defendant's power to meaningfully refute and [were] based on only the barest factual foundation." *Miller*, 588 F.2d at 1266. Despite Branco's protests before the district court that he was not associated with organized crime, "[n]othing in *Weston* requires the sentencing judge to conduct a trial-type inquiry into the validity of information in the presentence report merely because a defendant objects to its validity." *Id.* at 1266–67.

### C.

Branco also charges that the sentencing memorandum was prepared to punish him for failing to cooperate with the government. However, he does not allege, nor could he prove, impermissibly selective

prosecution on the facts alleged. *See United States v. Martinez,* 785 F.2d 663, 670 (9th Cir.1986); *United States v. McWilliams,* 730 F.2d 1218, 1221–22 (9th Cir. 1984) (per curiam). Branco also vaguely suggests that his discussions with the government somehow violated *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964) (*Massiah* ), and *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977) (*Brewer* ). However, Branco does not argue that he failed to waive his right to counsel, or that the government was less than straightforward in its discussions. *Compare Brewer,* 430 U.S. at 399–406, 97 S.Ct. at 1239–1244; *Massiah,* 377 U.S. at 202–05, 84 S.Ct. at 1200–03. No constitutional violation is seriously alleged.

AFFIRMED.